THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **VICTOR SANTANA-GONZALEZ**<br><br>**Petitioner,**<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>**Respondent.** | **Civil No. 21-1512 (ADC)**<br>**[Related to Crim. No. 12-200-5 (ADC)]** |

**OPINION AND ORDER**

Víctor Santana-González ("petitioner") filed a *pro se* petition for relief under 28 U.S.C. § 2255 ("petition"), **ECF No. 1**. For the following reasons, the petition at **ECF No. 1** is **DENIED**.[1]

**I.     Procedural and factual background**

On June 20, 2012, petitioner along with 32 other co-defendants were charged in a multicount Superseding Indictment. **Crim. No. 12-200 [5], ECF No. 196**. Petitioner was charged with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(d) (Count One); conspiracy to posses with intent to distribute cocaine base, cocaine, heroin, and marijuana within a public housing project (Count Two); conspiracy to possess firearms during and in relation to narcotics trafficking offense (Count Three); a violent crime in aid of racketeering activity- the murder of Victor Vega-Ortega (Count Thirteen); possession of a

---

[1] The case is summarily dismissed under Rule 4(b) of the Rules Governing § 2255 Proceedings. *Carey v. United States*, 50 F.3d 1097, 1098 (1st Cir. 1995).

machinegun (Count Fifteen); knowing transfer of a firearm for use in a crime of violence (Count Sixteen); a violent crime in aid of racketeering activity-the murder of Christian Toledo-Sánchez (Count Twenty-Nine); and two counts of using and carrying a firearm in relation to a crime of violence (Counts Fourteen and Thirty). *Id*.

On October 20, 2016, petitioner pleaded guilty to Count One pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C). **Crim. No. 12-200 [5], ECF No. 1899, 1890, 1901.** The plea agreement contained a recommendation for a sentence within the range of 216-312 months. **Crim. No. 12-200 [5], ECF No. 1899** at 4. The agreement also included a waiver of right to appeal.

On May 24, 2018, petitioner was sentenced to 264 months of imprisonment, followed by a 5-year term of supervised release, and a $100.00 special monetary assessment. **Crim. No. 12-200 [5], ECF No. 2164, 2165.**[2]

Petitioner appealed arguing for vacatur of his sentence grounded on his contention that he was not afforded allocution rights. Fed. R Crim. P. 32(i)(4)(A)(ii). **Crim. No. 12-200 [5], ECF No. 2173;** *Víctor Santana-González v. United States*, USCA Case No. 18-1586 (1st Cir.). Specifically, petitioner argues that he began his allocution but was cut short and was not allowed to complete his allocution regarding his medical condition and needs. The Court of Appeals denied his argument, making direct reference to the record of the sentencing hearing. **Crim. No. 12-200 [5],**

---

[2] Petitioner's sentence was below the minimum of the applicable guideline range (*see* Presentence Report, **ECF No. 1957** at 28 and 36) but within the guideline range stipulated within the plea agreement. **ECF No. 1899** at 4.

**ECF No. 2281;** *Víctor Santana-González v. United States*, USCA Case No. 18-1586. Petitioner then filed a petition for certiorari with the United States Supreme Court. *Santana-González v. United States*, 141 S. Ct. 428 (2020). On October 5, 2020, the Supreme Court denied petitioner's certiorari. *Id*.

On October 5, 2021, petitioner filed the instant petition. **ECF No. 1**. He argues that his conviction and sentence should be vacated because they were rendered in violation of his Sixth Amendment right, U.S. Const., Amend. VI, to effective assistance of counsel. *Id.*; **ECF No. 1-1**.

## II.     Legal Standard

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by [an] Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "[T]he statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (citing *Hill v. United States*, 368 U.S. 424, 426-27 (1962)). Claims that do not allege constitutional or jurisdictional errors are properly brought under § 2255 only if the claimed error is a "fundamental defect which fundamentally results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Id*.

To succeed on a claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" *Williams v. United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first requirement necessitates a demonstration that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. (citation and internal quotation marks omitted). Nonetheless, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (citations and internal quotation marks omitted). This standard is "highly deferential" and courts "indulge a strong presumption that . . . under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Walker v. Medeiros*, 911 F.3d 629, 633 (1st Cir. 2018) (citing *Strickland*, 466 U.S. at 689).

The second prong requires that defendant "show that the deficient performance prejudiced the defense, which requires proof that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jaynes v. Mitchell*, 824 F.3d 187, 196 (1st Cir. 2016).

Generally, failure to prove either prong of an ineffective assistance claim is fatal to the claim. *United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012). Thus, the petitioner bears a heavy burden of proof in this regard. *See Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir. 1996).

## III.    Discussion

Petitioner argues that counsel was constitutionally ineffective inasmuch as he interrupted petitioner's allocution during sentencing and failed to appraise the Court that petitioner had not concluded his allocution. Fed. R. Crim. P. 32(i)(4) provides:

(4) *Opportunity to Speak.*

(A) *By a Party.* Before imposing sentence, the court must:

(i) provide the defendant's attorney an opportunity to speak on the defendant's behalf;

(ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and

(iii) provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

As explained herein below, the petition fails on several grounds. First, it relitigate an issue raised, addressed, and denied on direct appeal. Second, even if the Court reached the merits of petitioner's arguments, they fail both at the effectiveness and the prejudice prongs of the *Strickland* test.

### A.    Relitigating issues addressed on direct appeal

Notably, petition raised this same argument on direct appeal. The Court of Appeals outright rejected petitioner's contentions. Bypassing the question of whether the plea agreement's appeal waiver barred petitioner from raising the issue on direct appeal, the Court of Appeals reasoned:

> the district court addressed Santana directly and asked if there was anything he would like to say or have the court consider before imposing

> sentence. This invitation was sufficient to inform Santana of his right to speak broadly on any subject of his choosing. See De Alba Pagan, 33 F.3d at 129. Instead of offering mitigating information and arguing for a 216-month sentence, Santana inquired about the possibility of obtaining further evidence to support his argument that his medical condition warranted leniency, and then was interrupted by defense counsel. A discussion about existing evidence concerning Santana's condition ensued, and the court then heard from the government. Before proceeding to impose sentence, the court asked if "either side" had anything else to add. Santana said nothing. Santana argues that the court's initial open-ended invitation failed to provide an adequate opportunity for allocution because Santana was interrupted by counsel and the court did not renew its invitation after defense counsel finished speaking; although the court asked if either side had anything to add before imposing sentence, it did not specifically address Santana. But we have held that the Federal Rules "do not require a sentencing court to remind a defendant of the right to allocute so long as the court clearly notifies the defendant once," United States v. Burgos-Andujar, 275 F.3d 23, 28-29 (1st Cir. 2001), and other courts have found that the right of allocution was satisfied based on similar facts… Neither Santana nor his counsel indicated that Santana had anything further to say, and Santana does not now identify any additional facts or arguments in mitigation that were not presented to and considered by the court.

**Crim. No. 12-200 [5], ECF No. 2281** at 2-3.

The question addressed by the Court of Appeals is the same issue before this Court but under the guise of ineffective assistance of counsel. *See* **ECF No. 1**. "[P]etitioner may not revive claims already decided on direct appeal by cloaking them in 'ineffective assistance of counsel' garb in a § 2255 petition." *Dowdell v. United States*, 859 F. Supp. 2d 176, 178-79 (D. Mass. 2012) (citing *United States v. Michaud*, 901 F.2d 5, 6 (1st Cir. 1990)). Indeed, several decades ago, the First Circuit explained that "claims raised in the § 2255 motion were decided on direct appeal and may not be relitigated under a different label on collateral review." *United States v. Michaud*,

901 F.2d 5, 6 (1st Cir. 1990); *see also Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) ("[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion.").

Even if petitioner's claim was colorable on collateral review, it fails to meet Sixth Amendment's bar under *Strickland*.

### B.     *Strickland*'s ineffectiveness

Petitioner must show that counsel's representation "fell below an objective standard of reasonableness." *Moreno-Espada v. United States*, 666 F.3d 60, 64 (1st Cir. 2012). "Only when counsel's strategy was so patently unreasonable that no competent attorney would have made it[,] may we hold such performance as deficient. Review of counsel's performance must be deferential, and reasonableness must be considered in light of prevailing professional norms." *Watson v. U.S.*, 37 F.4th 22, 28 (1st Cir. 2022)(cleaned up).

During sentencing, among other things, the Court heard from the parties as to the objections to the Presentence Report and heard from defense counsel as to petitioner's sentencing memorandum. Among other topics, the discussion focused on the issue of petitioner's alleged decreased life expectancy due to paraplegia. **Crim. No. 12-200 [5], ECF No. 2194** at 9-10. The Court asked the defense to expound on the available medical evidence, if any, in support of petitioner's shorten-life expectancy argument. During that exchange, the Court asked:

> THE COURT:… In addition to that, any other matter that I should be addressing, Counsel?
> MR. IZURIETA ORTEGA: No, Your Honor. Only we rest on our presentence and defendant's memorandum of sentence, especially, Your Honor, on the conclusion.
> THE COURT: I'll hear from you by means of allocution, just in case that I need to address anything else.
> MR. IZURIETA ORTEGA: That's it.
> THE COURT: I'm sorry?
> MR. IZURIETA ORTEGA: Excuse me. I didn't –
> THE COURT: If you have additional information aside from the sentencing memorandum that you would like to submit at this stage.
> MR. IZURIETA ORTEGA: Not at this time.

**Crim. No. 12-200 [5], ECF No. 2194** at 10. The Court then summarized what the record reflected on the issue of life expectancy and, once again, asked the defense "…So aside from that, any additional information? MR. IZURIETA ORTEGA: No, Your Honor." *Id*., at 11. Immediately after, the Court addressed petitioner, inquiring whether he had "read the Presentence Report and if that has been discussed with you by counsel… in Spanish". *Id*. Petitioner stated that he did and added that he did not understand "why the previous attorney didn't give any of my medical records supporting my condition." *Id*., at 11. The Court went on to clarify that his medical record was in the case record and that the only thing that was not properly submitted was medical evidence of his allegedly shortened life expectancy due to paraplegia. *Id*.

After that explanation, the Court asked petitioner "Okay. Anything else that you would like to mention or say at this time, Mr. Santana, that you would like me to consider?" Petitioner stated that he "would like to see if that evaluation could be done, like you said, to see if –" but counsel interrupted him to add that he had submitted a report by the National Spinal Cord

Injury Center on the life expectancy question. *Id.*, at 13. The Court and petitioner's counsel discussed the report and the sentence recommendation.

After a hearing from both parties, the Court then questioned "Anything else from either side?" *Id.*, at 16. Petitioner's counsel argued for the lower end of the sentencing guidelines. *Id.* The Court then determined that the applicable guidelines sentencing range was 292-365 months' imprisonment. *Id.*, at 18. However, taking into account the plea agreement and the physical condition of petitioner, the court imposed a 264-month sentence which was within the range set out by the plea agreement and below the guidelines range.

Accordingly, the record shows that even though at a certain point during sentencing petitioner was interrupted by counsel, the Court allowed not one but several opportunities for counsel and petitioner to raise "any" issues or otherwise address the Court. In fact, right before the Court handed down its sentence, it granted petitioner a chance to make an allocution or raise any other concern. **Crim. No. 12-200 [5], ECF No. 2194** at 16.

It is well settled that denying Rule 32(a)(1)(C) rights ordinarily requires vacation of the sentence. Specifically, "if the trial court fails to afford a defendant either the right of allocution conferred by Rule 32(a)(1)(C) or its functional equivalent, vacation of the ensuing sentence must follow automatically." *U.S. v. De Alba Pagán*, 33 F.3d 125, 130 (1st Cir. 1994). However, this requirement is satisfied if "the court, the prosecutor, and the defendant. . . interact in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any

subject of his choosing prior to the imposition of sentence." *De Alba Pagan*, 33 F.3d at 130; accord United States v. *Gonzalez-Melendez*, 594 F.3d 28, 37-38 (1st Cir. 2010). There is no room to argue that petitioner did not know "he had a right to speak on any subject of his choosing prior to the imposition of sentence." *Id*. Specially, given the fact that Fed. R. Crim. P. 32 does "not require a sentencing court to remind a defendant of the right to allocute so long as the court clearly notifies the defendant once[.]" *United States v. Burgos-Andujar*, 275 F.3d 23, 28-29 (1st Cir. 2001). Thus, counsel was not constitutionally ineffective for failing to appraise or ask the Court for an additional turn for petitioner's allocution.

### B. *Strickland* 's Prejudice

Petitioner bears a heavy burden of proof in meeting *Strickland*'s bar. *See Argencourt v. United States*, 78 F.3d at 16. Petitioner simply contends that he was deprived of an opportunity to "show remorse". **ECF No. 1-1** at 9. However, the record shows that he had ample opportunity to express "remorse" and arguments in mitigation before being sentenced. Moreover, in the affidavit submitted with this petition makes no reference to specific expressions of remorse that, but for counsel's performance, he would have been able to expand on during his allocution. *See* **ECF No. 1-2**. Nor did he express any such feeling during his interview for the preparation of his pre-sentence report where he "exercised his right not to provide further information as to his participation or circumstances that led to his involvement in the offense." **Crim. No. 12-200 [5], ECF No. 2163** at 26. Actually, the record reflects that the parties and more so, defendant were

given ample opportunity to address the Court. Furthermore, as correctly pointed out by the government, he does not even claim that but for counsel's performance he would not have pleaded guilty. Having clarified the above, the Court denies the instant petition for failure to meet the *Strickland*.

**IV.    Conclusion**

In light of all the above, the petition at **ECF No. 1 is DENIED**. Judgment shall be entered accordingly.

**V.    Certificate of Appealability**

Rule 11(a) of the Rules Governing § 2255 Proceedings provides that a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Considering all the above, the Court **DENIES** the COA.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 31st day of March 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**